# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA



APR 07 2008



UNITED STATES OF AMERICA
v.
ALEXSANDR BERNIK

**CRIMINAL COMPLAINT**

CASE NUMBER: 2:08-mj-0124 DAD

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In **Sacramento** County, in the State and Eastern District of California and elsewhere Defendant Alexsandr Bernik did,

1. From August 2006 through November 2006, violate Title 18 U.S.C. section 1029(a)(5), (b)(1) and (c)(1)(A)(ii) (Access Device Fraud);

2. On or about November 1, 2006, violate Title 18 U.S.C. Section 1956(a)(1)(B)(ii) (Money Laundering);

3. On or about September 23, 2006, cause a mailing to be sent in furtherance of a scheme to defraud in a violation of Section 1341 (Mail Fraud); and

4. On or about November 2, 2005 and December 13, 2005, violate 18 U.S.C. section 1014 (False Statement Regarding Loan and Credit Application).

I further state that I am a Special Agent with the United States Secret Service (USSS) and that this complaint is based on the following facts:

▸ See Affidavit attached hereto and incorporated fully herein.

_X_ Continued on the attached sheet and made a part hereof.

Signature of Complainant  Kelly M. Shintaku
Special Agent, USSS

Sworn to before me, and subscribed in my presence

4/2/08                    at    Sacramento, California

Date                            City and State

UNITED STATES MAGISTRATE JUDGE         Dale A. Drozd
Name and Title of Judicial Officer     Signature of Judicial Officer

AFFIDAVIT FOR COMPLAINT AND ARREST WARRANT

I, Kelly M. Shintaku, a Special Agent of the United States Secret Service, being duly sworn, depose and state as follows:

## Background

1. I am a Special Agent with the United States Secret Service (USSS). I have been so employed since July of 2004. I am currently assigned to the Sacramento Resident Office. I have received training at the Federal Law Enforcement Training Center in Glynco, GA and the USSS Training Facility in Beltsville, MD. In November 2005, I attended the Basic Investigations of Computer and Electronic Crimes Program (BICEP) and received my BICEP certification. As part of my duties, I investigate offenses involving access device fraud, wire fraud, and bank fraud. In these capacities, I have become familiar with the investigation and prosecution of access device fraud, wire fraud and bank fraud, including the use of various criminal methods to perpetrate these frauds.

2. In connection with this investigation I have also consulted with a Special Agent of the Internal Revenue Service-Criminal Investigation regarding anti-structuring and money laundering laws. See, e.g., 18 U.S.C. Section 1956-57. I am advised that at all times relevant to this investigation it was a federal crime to conduct a financial transaction with the proceeds of specified unlawful activity (SUA) to avoid the $10,000 Currency Transaction Reporting imposed by federal law and regulations, knowing that the funds involved in the transaction represented SUA proceeds. See 18 U.S.C. section 1956(a)(1)(B)(ii).

3. I have participated in investigations to include cases involving access device fraud, wire fraud, counterfeiting of access devices, identity theft, computer fraud, mortgage fraud and identity document fraud. I have consulted other agents of the Secret Service regarding mortgage fraud investigations. Further, I have received extensive training regarding the investigation and prosecution of access device fraud cases.

4. Based on my training and experience from past counterfeit/unauthorized access device fraud investigations and consultation with other law enforcement officers regarding various counterfeit/unauthorized access device, and wire fraud investigations, I am aware that these fraudulent schemes involve a number of component activities including, the illegal obtaining of, and trafficking in, valid credit card account numbers, to include American Express credit card account numbers. The unauthorized credit card account numbers are charged for various amounts. The transactions are posted to an authorized merchant terminal. The credit card is not physically present and the bar code is not swiped during these transactions. Rather, the credit card number is manually keyed into the merchant's terminal.

5. Based on my knowledge, training and experience from past mortgage fraud investigations, I know that individuals engaged in these fraud schemes often alter or

1

counterfeit documents used to establish credit and obtain loans. I know that income stated in order to obtain the loans is commonly overstated.

6. Based on my knowledge, training and experience from past money laundering investigations, I know that individuals engaged in criminal activity commonly deposit or withdraw funds from accounts held at federally insured financial institutions. These individuals engage in cash transactions, frequently at amounts below the federal currency transaction reporting (CTR) threshold of $10,000, to avoid reporting requirements and to conceal the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

**Charges**

7. I make this affidavit in support of the issuance of a Criminal Complaint and Warrant for the arrest of:

- Alexsandr "Alex" Bernik, DOB 9/10/1978, FBI 386481CB6

8. I am familiar with the information contained in this affidavit based on: (i) direct knowledge of each of the following facts, or upon information provided to me by other law enforcement officers; (ii) interviews conducted with, and correspondence received from, various individuals including American Express accountholders whose information was compromised, and (iii) information received from third parties, such as an American Express investigator. Not all of the facts known to me are included herein; I have only included those facts necessary to show that probable cause exists to believe that Alex Bernik committed the federal violations identified in paragraph 9 below.

9. I make this affidavit in support of the issuance of a criminal complaint and arrest warrant for Alexandr "Alex" Bernik. As described below, this affidavit sets forth probable cause to believe that Alexandr Bernik committed the following violations:

   a. From August 2006 through November 2006, Bernik committed a violation of Title 18 U.S.C. Section 1029 (a) (5), (b)(1) and (c)(1)(A)(ii) (Access Device Fraud);

   b. On or about November 1, 2006, Bernik committed a violation of Section 1956(a)(1)(B)(ii) (Money Laundering);

   c. On or about September 23, 2006, Bernik caused a mailing to be sent in furtherance of a scheme to defraud in a violation of Section 1341 (Mail Fraud);

   d. On or about November 2, 2005 and December 13, 2005, Bernik committed a violation of 18 USC Section 1014 (Mortgage Fraud).

Under Section 1029(a)(5), (b)(1) and (c)(1)(A)(ii) of title 18, it is a felony to knowingly and with the intent to defraud, effect transactions, with one or more access devices issued

2

to another person or persons, during any one-year period, and by such conduct obtain anything of value aggregating to more than $1,000. Under Section 1956(a)(1)(B)(ii), it is a felony to conduct financial transactions knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, and which property in fact involves the proceeds of specified unlawful activity, to avoid a transaction reporting requirement under State or Federal law. Under Section 1341, it is a felony to, in the course of executing a scheme to defraud or a scheme to obtain money by false statements or promises, to knowingly cause the mails to be used in furtherance of the scheme. Under 18 USC Section 1014, it is a felony to knowingly make any false statement or report for the purpose of influencing in any way the action of any depository institution, the accounts of which are federally insured.

10. Based on the facts set forth in this affidavit, I believe there is probable cause for a complaint and arrest warrant for Alexsandr Bernik for the violations set forth in paragraph 9 above.

**Overview of the Fraud and Money Laundering Scheme**

11. Based on my investigation, it appears that Bernik engaged in a credit card scheme in which he established himself as merchant authorized to accept American Express transactions and then obtained and fraudulent used American Express account holder information to conduct American Express transactions. The proceeds from the offense were credited to a bank account he controlled, and a substantial portion of those proceeds were then withdrawn in cash transactions, many of which appear to have been conducted to avoid CTR requirements.

12. In particular, bank records indicate that on October 3, 2005, Bernik obtained a Simple Business Checking account from First Bank in the name of Alexander Bernik dba Lexbay Limited (hereinafter "Lexbay Account"). This account was opened at the First Bank located at 201 Vernon Street, Roseville, CA 95678. In addition, Bernik dba Lexbay obtained an authorized merchant terminal to process payments via credit card, specifically American Express transactions. Lexbay filed its Fictitious Business Name Statement on 10/3/2005 in Placer County. The Fictitious Business Name Statement indicates Alex Bernik as the sole owner of the business. According to information I obtained from the Federal Deposit Insurance Corporation's website: http://www2.fdic.gov/idasp/main_bankfind.asp, First Bank is a federally-insured bank that maintains branches at various locations in the State and Eastern District of California.

13. In the course of this investigation I obtained and reviewed bank statements for the Lexbay Account for the period from October 2005 through November 2006. My review of those statements indicates that beginning in late July 2006, Lexbay Account received Automated Clearing House (ACH) credits from American Express, an issuer of credit cards to individuals and entities throughout the United States and elsewhere. In a three-month period prior to November 1, 2006, the Lexbay Account received approximately $177,000.00 in ACH credits from American Express. During the months of August,

3

September and October, ACH deposits from American Express to the Lexbay Account were $15,399, $50,768, and $93,754, respectively.

**Fraudulent Nature of the Charges – Access Device Fraud/Mail Fraud**

14. On or about January 23, 2007, I visited two websites: www.fatwallet.com, a bargain hunting website that allows users to publish deals and rebate offers on a comprehensive range of products, and www.bargainshre.com, a similar website to Fatwallet. Information I obtained from those websites, as well as from American Express, revealed American Express account holders were being charged fraudulently by Lexbay. American Express provided documentation of several account holders who self-reported the fraudulent charges by Lexbay to their accounts. At the website www.fatwallet.com, I discovered a thread entitled: Alert: Possible Fraud on Amex Lexbay Ltd., Roseville, CA, 37 people hit so far." Beneath that caption, there were a number of postings by site members complaining that their American Express bill included fraudulent charges from Lexbay. The bloggers write that on their American Express statements, the fraudulent charges show Lexbay as the company and show the business is located at "8592 Las Brisas Cir, Roseville, CA 95747 USA" The earliest posting is dated 9/29/06 and the latest posting is dated 11/17/06. On the www.bargainshare.com website, I found additional complaints of fraudulent charges to American Express accounts from Lexbay. The content of the complaints is similar to those found on www.fatwallet.com.

15. Many of the fraud charges reported to American Express and posted on the Fatwallet website describe charges in the range between $9 - $15 and were incurred from August to November 2006. The transactions indicate that "Lexbay, Ltd/Alexander" is the merchant and the transaction was related to "Mobile Content – Games."

16. American Express provided to me account information that, among other things, related to suspected fraudulent charges by Lexbay to the accounts of American Express cardholders. American Express received account holder complaints related to charges made by Lexbay from approximately 270 American Express account holders. Based on the fraudulent complaints alone, American Express identified approximately $3,300 in loss. However, given the low value of the charges made to each compromised American Express account, the large amount of ACH credits to Bernik's First Bank account from American Express, and given the number of American Express customer complaints, I believe that this is probably a small fraction of the total fraudulent activity involving American Express customers whose American Express numbers incurred charges to Lexbay.

17. American Express also provided me with account information for other American Express accounts that had incurred charges by Lexbay for supposed mobile content. American Express documentation indicates in excess of 10,000 American Express accounts were charged for mobile content by Lexbay between August 21, 2006 and November 1, 2006. On November 19, 2007, I spoke with the cardholder for the account with an account number ending in "1126." I was informed that this account was

4

a business account. The cardholder reported that a charge had occurred on one of its American Express accounts on September 23, 2006 for $11.87, and that the charging merchant was Lexbay. The cardholder confirmed the company did not order any mobile content from Lexbay and in fact had not heard of Lexbay. The cardholder stated that for for the past 11 years and continuing to the present, the company has always received its American Express billing statements delivered to it through the US mails. This cardholder is located in Sacramento, California, and this is the location at which the customer received its American Express statements. The cardholder also confirmed that it is the business practice of the company to pay its American Express bills promptly upon receipt by mail of its American Express monthly billing statement.

18. On September 5, 2007, I spoke with Investigator Dan Varoz at American Express. He confirmed that American Express sends monthly billing statements to its cardholders either by US mail, or by email containing notifications of statements and special offers. When a statement notification is received electronically, the cardholder can go to the American Express web-site and logon to their account. In addition, many of the complaints filed by American Express Cardholders were filed via telephonic communication. As a result of these fraud complaints by accountholders, American Express reversed the charges and applied a credit for the fraud charge on these accounts.

19. On November 2, 2007, I sent 49 American Express cardholders letters regarding the suspected fraudulent charges placed on their accounts by Lexbay. To date, I have heard back from 27 recipients of these letters. Each has confirmed they did not place an order with Lexbay and each confirmed they had never heard of Lexbay. until the charge appeared on each of their American Express monthly billing statements. These customers confirmed that they each received their statements from American Express either via US Post or email/online.

20. On November 19, 2007, I spoke with the accountholder for the card with an account number ending in "3008" regarding a fraudulent charge from Lexbay that appeared on the American Express. The victim accountholder resides in Duluth, GA and receives statements by US Post. The account holder notified American Express shortly after receiving the statement and alerted them to the fraud charges.

**Cash Withdrawal Activity**

21. The First Bank bank records I reviewed also showed that during approximately the same period as the ACH deposit occurred in the Lexbay account, there was significant cash withdrawal activity from the same account in an amount totaling approximately $143,800. I have probable cause to believe that many of these cash withdrawal transactions were conducted to avoid the federal currency transaction reporting requirement that requires financial institutions such as First Bank to report cash transactions involving more than $10,000. I base this conclusion on the fact that there were numerous multiple cash withdrawals in large dollar amounts below the CTR threshold made on or near the same date and at a time when the account held more than $10,000 in funds. In addition, these withdrawals often occurred at different bank

5

branches. I have probable cause to believe that Alex Bernik conducted these withdrawal transactions. Documents obtained from First Bank show checks drawn against the account and signed for by Alex Bernik and made payable to either Cash or Alex Bernik. These checks are denominated in dollar amounts below the CTR threshold. During this time period, there was no single cash withdrawal for an amount greater than $10,000. For example, the following cash transactions appear as debits on the Lexbay Account totaling $58,900 occurred between October 16, 2006 and November 1, 2006:

| **DATE** | **AMOUNT** |
| --- | --- |
| 10/16/06 | $4,000 |
| 10/17/06 | $3,000 |
| 10/18/06 | $4,500 |
| 10/20/06 | $9,800 |
| 10/23/06 | $9,500 |
| 10/24/06 | $2,000 |
| 10/26/06 | $9,000 |
| 10/27/06 | $2,300 |
| 10/30/06 | $5,000 |
| 11/01/06 | $9,800 |

**Mortgage Fraud Involving Freemont Investment and Loan and Downey Savings**

22. On November 2, 2005, Bernik obtained two mortgage loans for real property located at 4749 Oakhollow Drive, Sacramento, CA from Fremont Investment and Loan, a financial institution insured by the FDIC and headquartered in Brea, CA. I obtained and reviewed the loan files maintained by Fremont Investment and Loan that relate to this transaction. Those files disclose that Bernik obtained a primary mortgage loan in the amount of $272,000 and the secondary was $68,000. On the loan application which appears to bear Bernik's signature and initials, Bernik stated his monthly income was $8,000. The loan file also includes Wells Fargo Bank statements from September 2004 through September 2005 for the account with an account number ending in "6006" that appear to have been submitted to the lender as proof of income. The Wells Fargo Bank statements were from September 2004 through September 2005, and were a part of Fremont Investment and Loan's packet titled Income/Employment verification. On the Loan Application, Bernik claimed to run a sole proprietorship called Signature Painting located at 8673 Pasatiempo Circle, Roseville, CA. The fraudulent Wells Fargo Bank statements have the name Alexsandr Bernik at the top of the statement as the account holder on the documentation provided to Fremont. According to public real property records on reviewed using Sacramento County Master Property database, the Oakhollow property was foreclosed upon by Fremont Investment and Loan on or about January 19, 2007.

23. On February 15, 2008, I obtained copies of statements from Wells Fargo for the account ending in "6006." The individual identified as the accountholder for these accounts is Igor Bernik, dba Signature Painting at 8673 Pasatiempo Circle, Roseville, California. The documents received from Wells Fargo show Igor Bernik's name on the

6

statements. They do not show Alexsandr Bernik's name. The account was opened by Igor Bernik on June 13, 2004, as a sole proprietor dba Signature Painting. Alex Bernik was added as a signatory to the account on October 25, 2005; and was subsequently removed as a signatory on March 1, 2006. By comparing the authentic Wells Fargo billing statement I obtained from Wells Fargo to the billing statement contained in Fremont's loan file I have concluded that someone, likely Alex Bernik, altered the genuine Wells Fargo Bank statements to indicate that Alex Bernik was an accountholder.

24. On December 13, 2005, Bernik applied for and obtained a mortgage loan from Downey Savings and Loan. Downey Savings and Loan is a federally chartered savings association and is FDIC insured. Downey Savings and Loan is also a California Corporation. According to records I reviewed, it appears that Bernik obtained the loan for the property identified as 6128 32nd St, North Highlands, CA, in the amount of $560,000. In the loan application that appears to bear his signature and initials, Bernik stated he was self-employed and owned the business called Signature Painting. He stated his monthly income was $14,000. He provided Wells Fargo Bank statements for the account ending in "6006," as proof of income. These statements show Alexsandr Bernik, dba Signature Painting, 8673 Pasatiempo Cir, Roseville, CA. The statement is from October 21, 2005 through November 18, 2005. It shows a beginning balance of $24,107.69 and an ending balance of $19,630.97. The statement shows deposits into the account totaling $11,187.80 for this time period.

25. Once again, I reviewed the genuine statements from Wells Fargo for the account ending in "6006." The individual identified as the accountholder for these accounts is Igor Bernik, dba Signature Painting, 8673 Pasatiempo Circle, Roseville, CA. The statement from Wells Fargo Bank for the time period of 10/20/05 to 11/18/05 shows a beginning balance of $4,107.69 and ending balance of negative $630.97. Based on my comparison of the Wells Fargo statements that appear in the loan file to the Wells Fargo statements I obtained by subpoena from Wells Fargo I have determined that the statement provided to Downey Savings and Loan was altered to reflect a positive cash flow and increased income in order to substantiate Bernik's income as qualifying for the loan. It appears Bernik altered the statement and put a 2 in front of the actual balance of $4,107.69 to make it $24,107.69. In addition, he put a 19 in front of the previously negative balance of $630.97 to make it $19,630.97.

### Tax Records

26. The Franchise Tax Board conducted an investigation into Bernik's State of California tax filings for 2005 and 2006. In addition, I obtained and reviewed tax returns and tax return information related to Bernik's Federal tax filings with the Internal Revenue Service for 2005 and 2006. His state and federal income tax filings for 2005 and 2006 report income of $8,281 and $5,728, respectively. The filings for 2006 do not include the $187,000 in revenue received by Bernik dba Lexbay, Ltd via ACH credits into his First Bank account. The tax returns and return information also indicate that Bernik's reported income to taxing authorities is substantially less than the income he claimed in connection with the mortgage loan applications he submitted to Fremont and

7

Downey savings. Bernik stated income of between $8,000 and $14,000 per month in support of his mortgage loans. Bernik's 2006 tax documents show that using a cash accounting method, he had gross receipts or sales of $12,000 with business expenses of $6,272.

**Conclusion**

27.   Based on the foregoing, I respectfully submit that there is probable cause to believe Alexsandr "Alex" Bernik's committed violations of Title 18 U.S.C. sections 1341 (Mail Fraud), 1029 (a)(5), (b)(1) and (c)(1)(A)(ii) (Access Device Fraud), 1956 (Money Laundering) and 1014 (Mortgage Fraud).

I swear under penalty of perjury that the above facts are true and correct to the best of my knowledge and belief.

Kelly M. Shintaku, Special Agent
United States Secret Service

Reviewed and approved as to form

Courtney J. Linn
Assistant U.S. Attorney

Subscribed and sworn to before me this 2nd day of April, 2008, at Sacramento, California.

Honorable Dale A. Drozd
United States Magistrate Judge

8